**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| WARREN TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CV-21019-UU |
| | ) | |
| UL LLC and TUTCO, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TUTCO, LLC'S CORRECTED[1/] MOTION TO**
**DISMISS FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

BRYAN CAVE LEIGHTON PAISNER LLP
Jorge J. Perez (Florida Bar No. 779334)
jorge.perez@bclplaw.com
David Axelman (Florida Bar No. 90872)
david.axelman@bclplaw.com
200 South Biscayne Boulevard, Ste. 400
Miami, FL 33131-5354
Telephone: (786) 322-7500
Facsimile: (786) 322-7501

Jeffrey S. Russell (pro hac vice forthcoming)
jsrussell@bclplaw.com
Darci F. Madden (pro hac vice forthcoming)
dfmadden@bclplaw.com
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

*Attorneys for Defendant Tutco, LLC*

---

[1/]   This Motion corrects pagination errors in the table of contents and table of authorities of Tutco's previously filed motion (DE 9).

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

I. The Parties ........................................................................................................... 2

II. UL Mark and UL Standard 1995 ......................................................................... 2

III. The Claims ........................................................................................................... 4

IV. The Prior Litigation .............................................................................................. 5

STANDARD OF REVIEW ........................................................................................................... 6

ARGUMENT ................................................................................................................................. 6

I. The Complaint Should Be Dismissed For Lack of Standing Because It Fails To Plausibly Allege That Tutco Injured Warren ...................................................... 7

II. The Complaint Fails To Allege The Essential Elements of Any Cause of Action ..................................................................................................................... 8

    A. The Lack of Any Alleged Misrepresentation Is Fatal To All Claims. .................... 8

        1. Tutco's Products Are Certified, As Represented ........................................ 9

        2. Tutco's Products, In Fact, Satisfy UL 1995 ............................................. 11

    B. Warren Has Not Stated a Claim for False Association Because It Has No Valid Commercial Interest In The Mark At Issue ......................................... 11

    C. The FDUTPA Claims Fail For Multiple Other Reasons ...................................... 12

CONCLUSION ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aceto Corp. v. TherapeuticsMD, Inc.*,
   953 F. Supp. 2d 1269 (S.D. Fla. 2013) .................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................6, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................6, 7, 8

*Board-Tech Electronic Co. v. Eaton Electric Holdings LLC*,
   2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017),
   *appeal docketed*, No. 17-3829 (2d Cir. Nov. 27, 2017)...............................................10, 13, 14

*Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*,
   2006 WL 1896065 (W.D. La. July 7, 2006) ................................................................................9

*Burt v. Makita USA, Inc.*,
   212 F. Supp. 2d 893 (N.D. Ind. 2002) ........................................................................................9

*Diversified Mgmt. Solutions v. Control Sys. Research, Inc.*,
   2016 WL 4256916 (S.D. Fla. May 16, 2016) ..........................................................................13

*Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*,
   785 F.2d 897 (11th Cir. 1986) ....................................................................................................8

*Duncan v. Walker*,
   533 U.S. 167 (2001)..................................................................................................................11

*F.W.F., Inc. v. Detroit Diesel Corp.*,
   494 F. Supp. 2d 1342 (S.D. Fla. 2007), *aff'd*, 308 F. App'x 389 (11th Cir.
   2009) ........................................................................................................................................11

*Hennegan Co. v. Arriola*,
   855 F. Supp. 2d 1354 (S.D. Fla. 2012) ......................................................................................7

*Hickson Corp. v. Northern Crossarm Co.*,
   357 F.3d 1256 (11th Cir. 2004) ..............................................................................................7, 8

*Houston v. Marod Supermarkets, Inc.*,
   733 F.3d 1323 (11th Cir. 2013) ..................................................................................................6

*Kertesz v. Net Transactions, Ltd.*,
   635 F. Supp. 2d 1339 (S.D. Fla. 2009) ...............................................................................8, 12

*Koski, et al. v. Carrier Corp., et al.*,
   No. 16-25372 ...............................................................................................................1, 6, 10

*Leon v. Tapas & Tintos, Inc.*,
   51 F. Supp. 3d 1290 (S.D. Fla. 2014) .....................................................................................12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................................7

*Monsanto Co. v. Campuzano*,
   206 F. Supp. 2d 1252 (S.D. Fla. 2002) (Jordan, J.) ................................................................12

*North Am. Med. Corp. v. Axiom Worldwide, Inc.*,
   522 F.3d 1211 (11th Cir. 2008) ...........................................................................................8, 12

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
   842 So. 2d 773 (Fla. 2003) ....................................................................................................8, 13

*Procaps S.A. v. Patheon Inc.*,
   36 F. Supp. 3d 1306 (S.D. Fla. 2014) .......................................................................................7

*Richard Boyd Enterprises, Inc. v. Aquarium Pharmaceuticals, Inc.*,
   2010 WL 11448226 (S.D. Fla. Feb. 8, 2010) .....................................................................12, 13

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) .......................................................................................8

*Taft v. Dade Cty. Bar Ass'n, Inc.*,
   2015 WL 5771811 (S.D. Fla. Oct. 2, 2015) (Moore, J.) .........................................................12

*Trans USA Prods., Inc. v. Howard Berger Co.*,
   2008 WL 852324 (D.N.J. Mar. 28, 2008) .................................................................................9

*United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*,
   220 F.3d 539 (7th Cir. 2000) ....................................................................................................9

*Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*,
   524 F.3d 1229 (11th Cir. 2008) ................................................................................................6

**Statutes**

15 U.S.C. § 1125 ................................................................................................................................12

15 U.S.C. § 1125(a)(1)(A) ..................................................................................................................5

15 U.S.C. § 1125(a)(1)(B) ................................................................................................................5

Fla. Stat. § 501.201-13 ....................................................................................................................5

Fla. Stat. § 501.211(2)...................................................................................................................12

Fla. Stat. § 509.211 .......................................................................................................................10

Fla. Stat. § 526.141 .......................................................................................................................10

Fla. Stat. § 553.88 ...........................................................................................................................9

Fla. Stat. § 633.102 .......................................................................................................................10

**Rules**

Fed. R. Civ. P. § 12.........................................................................................................................7

Fed. R. Civ. P. § 12(b)(1).......................................................................................................1, 6, 7

Fed. R. Civ. P. § 12(b)(6)..................................................................................................1, 6, 7, 13

**Regulations**

24 C.F.R. § 3280.703 ......................................................................................................................9

29 C.F.R. § 1910.7 ..........................................................................................................................9

Defendant Tutco, LLC ("Tutco"), by and through its undersigned counsel, hereby moves to dismiss the Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for lack of subject matter jurisdiction under Rule 12(b)(1).

## INTRODUCTION

This Complaint fails to allege any viable cause of action and should be dismissed as a matter of law.  The gist of the complaint is Plaintiff Warren Technology, Inc.'s ("Warren") belief that Defendant UL LLC ("UL") has wrongly certified certain heaters manufactured by Defendant Tutco as UL-compliant under the governing UL safety standard.  The problem with the allegations against Tutco is that the Complaint admits that Tutco's heaters *have been certified by UL* and, thus, Tutco was entitled to affix a UL label to its products.  Thus, Tutco's representation to consumers that its products are UL-certified is admittedly *true,* and the claims against Tutco are *self-defeating*.

This Court recently addressed and dismissed substantially similar claims involving the same UL standard.  Judge Robert Scola dismissed fraud-based class action claims against Tutco and other manufacturers, holding that they are not liable for using the UL label when their products are in fact certified by UL, despite the plaintiffs' assertions over the meaning the certification standard.  August 18, 2017 Order in *Koski, et al. v. Carrier Corp., et al.*, No. 16-25372, attached hereto as Exhibit 1 ("Ex. 1").  The present case—now brought by one of the defendant-manufacturers in that prior case—should be dismissed for the same reasons, as well as threshold issues of standing arising out of the fact that Warren has not pleaded any plausible claim that Tutco's representations injured Warren.  This case represents a baseless attack on the widely-honored UL certification system and tries to turn an attack on that system into a cudgel to beat up on a competitor.

## BACKGROUND

### I.     The Parties

Plaintiff Warren and Defendant Tutco are competing manufacturers, designers, and sellers of unitary electric heaters, which are component heating units positioned in the airflow supply of a furnace or air conditioner that heat the air as it passes over the heating elements. Doc. 1, ¶1.  These components are not, typically, sold separately to retail customers but are instead sold to HVAC distributors, installers, and equipment manufacturers.  *Id.*

Defendant UL is a "nationally recognized, for profit, testing lab that is accredited to test and analyze products to determine whether they comply with all applicable safety standards." Doc. 1, ¶39.  UL safety standards are created by a "consensus process that establishes the minimum product safety requirements," which is administered by UL affiliate and non-party Underwriters Laboratories, Inc.  *Id.* at ¶¶39-42.

### II.    UL Mark and UL Standard 1995

UL owns the "UL" certification mark at issue in Plaintiff's Complaint, which mark was registered in 1964 and renewed in 1999.  *See* Motion to Dismiss filed by Defendant UL.  As stated in the UL mark registration: "The certification mark is used by persons authorized by applicant to indicate that representative samplings of the products conform to the safety requirements used by the applicant."  *See id.* Pursuant to the certification mark registration, UL authorizes manufacturers to utilize UL's certification mark in connection with their products when representative samples of their products have been determined to conform to UL's safety standards.

UL 1995 is the safety standard that governs unitary electric heaters.  Doc. 1, ¶42.  UL 1995 contains numerous safety standards, including a requirement that unitary electric heaters contain certain safety devices that disrupt power to the heating coils when they become too hot. Doc. 1, ¶45.[2]

All unitary heaters incorporate devices called automatically-resetting limiting controls ("Automatic Reset Cutoffs") to prevent the heater from overheating.  Doc. 1, ¶¶22-23. Specifically, Automatic Reset Cutoffs sense when the temperature of the heating coils reaches a

---

[2]     There have been multiple editions of UL 1995. The Complaint quotes the edition currently in effect, which is the fourth.

certain preset limit and then deactivate the heater. *Id.* at ¶24. When the temperature cools down, the Automatic Reset Cutoff automatically resets and power is restored to the heater. *Id.* at ¶25. Automatic Reset Cutoffs are separate from the temperature-driven controls that govern normal operation of a unitary electric heater, and they only cycle when abnormally high temperatures are reached, unless there is a malfunction. *Id.* at ¶¶26, 28.

The Complaint interprets UL 1995 to require a different type of safety device than UL accepts. It alleges that Automatic Reset Cutoffs are "not sufficiently reliable to prevent a fire" and that UL 1995 requires unitary heaters to also include a Non-Self-Resetting-Cutoff ("NSRT" or "Manual Reset Cutoff"). Doc. 1, ¶¶28, 45-51. A Manual Reset Cutoff turns off the power to a heating unit if it reaches a certain preset temperature limit like an Automatic Reset Cutoffs does, but the Manual Reset Cutoff must be reset either by a professional technician or replaced after triggering, rather than resetting automatically. *Id.* at ¶34. The Complaint refers to Clause 30.16 of UL 1995 as requiring NSRT or Manual Reset Cutoffs. *Id.* at ¶¶45-46.

The quoted clause contains exceptions to the Manual Reset Cutoff requirement. Clause 30.16 requires that heaters "be provided with one or more manually resettable *or* replaceable backup protective devices of the type specified in Clause 30.17 that will, with the contacts of the [Automatic Reset Cutoff] permanently closed, limit the temperatures to comply with the requirements specified in the Backup protection tests—Clause 48." Doc. 1, ¶46 (emphasis supplied). One such exception is found in Clause 30.18, which is quoted in the Complaint and provides:

> The requirement specified in Clause 30.16 *does not apply* if no part of the [Automatic Reset Cutoff] circuit cycles under intended operating conditions. For example, an [Automatic Reset Cutoff] that directly controls a heating element is not required to be provided with the backup protection specified in Clause 30.16. The backup protection specified in Clause 30.16 is required for a product employing an electric heater that incorporates a switching device whose coil circuit is controlled by both the automatically resetting temperature-limiting control and a temperature-regulating control for the heater, except for products that comply with the exception of Clause 30.15.

Doc. 1, ¶48 (emphasis supplied).

The Complaint acknowledges that Automatic Reset Cutoffs cycle only during "abnormal … conditions of intended use." Doc. 1, ¶26. Warren contends, however, that Clause 30.18's reference to "intended operating conditions" must be read to include foreseeable "abnormal"

3

conditions that may cause the Automatic Reset Cutoff to cycle. *See id.* at ¶50. Based on that contention, Warren asserts that all Automatic Reset Cutoffs (including Tutco's) fail to satisfy the exception described in Clause 30.18 and that UL has misinterpreted its own standard to allow the use of Automatic Reset Cutoffs. *Id.* at ¶¶45-51, 53. Warren acknowledges that this interpretation renders Clause 30.18 practically superfluous, explaining that under its reading, the clause applies to "a practically non-existent subset of UE heaters." *Id.* at ¶51. Warren then asks this Court to substitute its judgment for UL's, to find that the Clause 30.18 exception does not apply to any unitary electric heaters, and to hold that heaters without Manual Reset Cutoffs do not satisfy UL 1995 and cannot be marketed as UL-certified.[3] There is no allegation that Tutco is involved in any way in interpreting or applying UL 1995.

### III.  The Claims

Each of Warren's claims is based on the contention that UL has certified Tutco's heaters as compliant with UL 1995 but that the heaters do not, in fact, comply with that standard and should not have been certified by UL. Doc. 1, ¶¶52-56. As to UL, the Complaint asks the Court to substitute its judgment for UL's and enter a declaratory judgment that UL 1995 requires Tutco devices to have Manual Reset Cutoffs. It further seeks to enjoin UL from certifying Tutco's products in the future unless they have Manual Reset Cutoffs.

As to Tutco, the Complaint seeks damages and injunctive relief under a variety of legal theories. Each claim is based on the same central allegation regarding Tutco's use of the UL-certification mark. The Complaint admits that UL actually certified the heaters but contends that Tutco's use of the UL certification mark is actionable because UL disagrees with Warren's interpretation of UL 1995. The Complaint does not allege that Tutco did anything improper to induce UL to certify its products or that Tutco's heaters do not comply with UL's interpretation of its own standard. Rather, the contention is that UL wrongly interprets UL 1995 and that Tutco is liable for using the UL mark when its products have in fact been certified by UL. Warren

---

[3]   The Complaint fails to acknowledge additional exceptions to the Manual Reset Cutoff requirement and makes no allegations whether Tutco products fall into any of these other exceptions. For example, Clause 30.17 of UL 1995 states that a Manual Reset Cutoff is not required even where the Automatic Reset Cutoff cycles under intended operating conditions, provided that the equipment meets certain additional specifications. Plaintiff's Complaint does not plead that Tutco's products fall outside the Clause 30.17 exception.

4

contends that Tutco's act of marketing these products as UL-certified amounts to: (1) false association under the Lanham Act, 15 U.S.C. §1125(a)(1)(A); (2) false advertising under the Lanham Act, 15 U.S.C. §1125(a)(1)(B); (3) common law unfair competition; and (4) violation of the Florida Deceptive and Unfair Trade Practices Act, §§501.201-13 ("FDUTPA").

The Complaint claims that Warren "lost sales" as a result of Tutco's conduct but it includes no factual allegations to support that conclusion. It fails to identify any products at issues and also fails to identify any customers or sales that were lost. Also missing is any allegation that that the UL certification mark played any role in customers' decisions to purchase Tutco products and any reason to believe that sales to Tutco would otherwise have gone to Warren, in the absence of the use of the UL certification mark. The Complaint demands an award of damages against Tutco in the amount of its unidentified lost sales. It also seeks to enjoin Tutco from marketing its heaters as compliant with UL 1995 or selling any heaters marked as UL 1995 compliant if they do not have a Manual Reset Cutoff.

## IV.   The Prior Litigation

Last August, Judge Scola dismissed a purported consumer class action seeking to substitute the Court's judgment for UL's and to impose upon UL and multiple manufacturers the interpretation of UL 1995 that Warren advances here. Ex. 1. In that action, six individual consumers alleged that unitary electric heaters in their homes failed to comply with UL 1995 (among other standards) because of their lack of Manual Reset Cutoffs, and that the defendants committed consumer fraud under FDUTPA and other torts by marketing the products as UL-certified. The plaintiffs asserted that these conditions rendered their devices less valuable than they should have been, rather than that they had caused any property damage or malfunctions. The prior suit named Tutco as a defendant, along with several other HVAC manufacturers, UL, and another nationally recognized testing laboratory. Notably, Warren was one of the *defendants* in that action, accused of selling at least some of its products without Manual Reset Cutoffs and marketing them as compliant with UL 1995, just as Warren accuses Tutco of doing here.

Judge Scola dismissed all of the plaintiffs' claims in the prior action. He held that a manufacturer's act of affixing a UL certification label to a product that was admittedly certified was not a misrepresentation by the manufacturer – regardless of allegations that the certification had been wrongly granted by UL. *See* Ex. 1 at 8 (holding that the complaint did not "adequately

5

allege[] that the Heater and HVAC Manufacturer Defendants are responsible for any misrepresentations in the certification labels"). He also found that the Complaint failed to acknowledge any of the exceptions to Clause 30.16 or to plead adequately that the manufacturing defendants did not qualify for any exception. Ex. 1 at 6-8. Other claims were dismissed on statute of limitations grounds. Plaintiffs were granted leave to amend their complaint to try to state actionable claims but they declined to do so.

## STANDARD OF REVIEW

Motions to dismiss must be granted under Rule 12(b)(1) where, as here, the court has no subject matter jurisdiction because the plaintiff lacks injury from the defendant's conduct. Federal jurisdiction is limited by Article III of the Constitution to cases or controversies. The "triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). A plaintiff without injury as a result of the defendant's conduct lacks Article III standing and the federal courts, in turn, lack jurisdiction over his or her complaint. *Id. Accord Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

Motions to dismiss should be granted under Rule 12(b)(6) where, as here, a plaintiff does not state any valid claim for relief. *See* Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate when a plaintiff fails to allege facts showing the claim to relief is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, nor can plaintiffs "unlock the doors of discovery for a plaintiff armed only with nothing more than conclusions." *Id.* at 678-79.

## ARGUMENT

All of Plaintiff's claims against Tutco are based on the same fatally flawed theory that was rejected by Judge Scola in *Koski*, namely that Tutco's truthful marketing of its products as UL-certified should be deemed unlawful because Warren believes that UL should not have certified the products. Even if Warren's interpretation of UL 1995 were correct (which it is not),

6

Warren has not identified any misrepresentation or other actionable misconduct by Tutco. Tutco is alleged to have used the UL certification mark when its products were admittedly certified by UL. The claims should be dismissed in their entirety for this reason alone. In addition, Warren has failed entirely to describe any plausible injury it suffered as a result of Tutco's alleged conduct. For these and other reasons detailed below, the Complaint should be dismissed.

I.  **The Complaint Should Be Dismissed For Lack of Standing Because It Fails To Plausibly Allege That Tutco Injured Warren**

As an initial matter, the Complaint must be dismissed in its entirety pursuant to Rule 12(b)(1) and Rule 12(b)(6) because it includes no well-pleaded allegations that Tutco's actions caused Warren any injury. Standing requires an allegation that the plaintiff must have suffered an injury in fact that is causally connected to the challenged conduct of the defendant. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The party invoking jurisdiction bears the burden of establishing these elements. *See id.* at 561. In addition to being required for standing, injury proximately caused by the defendant's actions is an element of each of the claims alleged in the Complaint. *See Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (plaintiff's injury is an element of Lanham Act claim); *Procaps S.A. v. Patheon Inc.*, 36 F. Supp. 3d 1306, 1334 (S.D. Fla. 2014) (proximately caused damages are an element of a common law unfair competition claim); *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1360 (S.D. Fla. 2012) (actual damages caused by defendant are element of FDUTPA claim).

All of Warren's claims fail because the Complaint includes no well-pleaded allegations that any action by Tutco caused Warren any injury. While the Complaint asserts that Warren lost unspecified sales because Tutco marketed Tutco's products as UL-certified (*see*, *e.g.*, Doc. 1, ¶72), it supplies no explanation as to why Tutco's labeling would have caused Warren to lose sales nor does it identify any customers or sales that were lost or that the UL certification on Tutco's products influenced any purchasing decisions at all – much less that the labels somehow caused customers to choose Tutco over Warren (versus some other heater manufacturer). The Complaint does not even identify the particular heaters at issue.

Rule 12 requires more than this kind of bald, conclusory allegation as to the elements of a claim. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This means that the plaintiff must allege sufficient facts that

7

show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Warren's complaint includes no plausible allegation that Tutco's marketing of Tutco's products as compliant with UL 1995 caused Warren any injury at all. *See, e.g., In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 964-65 (S.D. Cal. 2014) (dismissing claims for failure to plausibly allege cognizable injuries proximately caused by the defendant's breach).

## II. The Complaint Fails To Allege The Essential Elements of Any Cause of Action.

### A. The Lack of Any Alleged Misrepresentation Is Fatal To All Claims.

Misrepresentation or deception is a required element of each claim in the Complaint. *See*, *e.g.*, *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218-21 (11th Cir. 2008) (Lanham Act false association claim requires showing that defendant used the plaintiff's mark in a way that was likely to confuse consumers into believing that defendant's product is associated with plaintiff when it is not); *Hickson Corp.*, 357 F.3d at 1260 (Lanham Act false advertising claim requires showing, among other things, that advertisements of the opposing party were false or misleading); *Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986) (common law unfair competition requires the plaintiff to "establish deceptive or fraudulent conduct of a competitor and likelihood of customer confusion"); *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (deceptive or unfair practice is an element of FDUTPA claim).[4] Each of these claims fails to state a claim because

---

[4] FDUTPA claims may be based on a theory that the conduct was "deceptive" or that it was "unfair." A FDUTPA claim based upon an allegation of "unfair" conduct can be satisfied by proving that the defendant's conduct "offends established public policy" and was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," rather than that it was deceptive. *See Kertesz*, 635 F. Supp. 2d at 1348 (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)). Warren appears to assert that Tutco's conduct was both deceptive and unfair. *See* Doc. 1, ¶¶91, 92. To the extent that the FDUTPA claims are based on a deception theory, they fail for lack of allegations of any misrepresentation as described above, as well as for the other reasons detailed in Sections I above and II.C below. To the extent that the claims are based on a theory of "unfair" conduct, they fail only for the reasons detailed in Sections I above and II.C below.

8

6967262.6

Warren has failed to identify any actionable misrepresentation or deceptive act by Tutco and, to the contrary, admits that Tutco's heaters were certified by UL.

### 1. Tutco's Products Are Certified, As Represented

The Complaint accuses Tutco of marketing its products as UL-certified but admits that the heaters are, in fact, certified. This is dispositive of each of Plaintiff's claims.

A UL certification sticker is simply "the manufacturer's declaration that the marked product complies with UL's standards." *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, 2006 WL 1896065 (W.D. La. July 7, 2006). By affixing such a label, the manufacturer represents that UL has reviewed the product and concluded that it meets the standards published by UL and developed under an accredited process. *See United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios*, 220 F.3d 539 (7th Cir. 2000) (detailing UL's requirements for labeling a product with UL's certification mark); *Burt v. Makita USA, Inc.*, 212 F. Supp. 2d 893, 902 (N.D. Ind. 2002) (explaining that "UL makes the decision as to whether a product meets its standards so as to warrant the UL label," and distinguishing between UL certification and proof that a product is non-defective). Conversely, if a product has not been certified by UL, a manufacturer is not permitted to label it as such. *See 4500 Audek*, 220 F.3d at 543-44 (radio producer breached agreement with UL by labeling radios with UL mark because manufacturing had not complied with UL's specifications); *Trans USA Prods., Inc. v. Howard Berger Co.*, 2008 WL 852324, at *5-6 (D.N.J. Mar. 28, 2008) (noting that affixing UL labels without UL's permission leads consumers to believe that the products have been certified and thus violates the Lanham Act, but dismissing claims for lack of sufficient detail about the use of the labels). This certification and labeling system – including UL's qualifications to establish standards and to test against those standards – has wide and long-standing acceptance among regulators.[5]

---

[5] As the Complaint acknowledges, UL is accredited as a Nationally Recognized Testing Laboratory ("NRTL") by OSHA and authorized to set product safety standards and perform testing to those standards. *See* 29 C.F.R. §1910.7. In order to be certified as an NRTL, applicants must meet stringent criteria, including demonstrating that they are independent and that they have implemented effective procedures for producing reliable findings and for handling complaints and disputes (including disputes about the application of standards). *See id.* OSHA regularly audits NRTLs and certifications must be renewed every five years. *See id.* Many other statutes and regulations (as well as numerous local building codes) defer to these same OSHA-accredited NRTLs and their certification decisions. *See, e.g.,* 24 C.F.R. §3280.703 (adopting UL 1995 as minimum standard for heating and cooling in manufactured homes); Fla. Stat. §553.88

9

In *Koski,* Judge Scola rejected the theory that Tutco, Warren, and other HVAC manufacturers had made misrepresentations by marketing their UL-certified products as UL-certified; the Court found the plaintiffs' contention that the products did not actually meet the UL standard to be irrelevant.  Ex. 1 at 8.

The District Court in *Board-Tech Electronic Co. v. Eaton Electric Holdings LLC*, reached the same conclusion.  2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017), *appeal docketed*, No. 17-3829 (2d Cir. Nov. 27, 2017).  In *Board-Tech,* the plaintff argued that its own testing of the defendant's product showed the products not to be compliant with UL standards, despite UL's certification, making the marketing of those products as compliant improper.  *Id.* at *2.  The court ruled that UL is the "sole arbiter" of whether a product is compliant with its standards and that an admittedly authorized use of the UL mark could not be deceptive because "Defendants' use of the mark, as alleged by plaintiffs, indicates only that a representative sampling has conformed to the safety requirements."  *Id.* at *6-7.  *Board-Tech* makes clear that collateral attacks on the UL certification are not permitted. Because UL had actually certified the product and authorized the use of its mark, there was no deception and, thus, no viable claim.  In contrast to *Koski* and *Board-Tech*, no court so far as we can tell has substituted its judgment for UL's as to whether a product should be certified.

The Complaint admits that UL has certified Tutco's products as compliant with UL 1995 (Doc. 1, ¶¶41, 53-55), which is exactly what Tutco is accused to have promised consumers by

---

(adopting UL standards for various aspects of electrical and alarm standards under the Florida Building Code); Fla. Stat. §526.141 (requiring self-service gasoline stations to prevent the dispensing of motor fuel into containers unless they "bear[] a seal of approval of a nationally recognized testing agency");  Fla. Stat. §633.102 (requiring fire extinguishers "listed by a nationally recognized testing laboratory");  Fla. Stat. §509.211  (requiring lodging and food service establishments to install carbon monoxide detectors "listed as complying with the Underwriters Laboratories, Inc. 'Standard for General-Purpose Signaling Devices and Systems'" or ones that comply with the National Fire Protection Association standard).

affixing the UL sticker. There has been no misrepresentation by Tutco, and the Complaint should be dismissed as a matter of law.

### 2. Tutco's Products, In Fact, Satisfy UL 1995

Furthermore, even if the Court had the authority to substitute its judgment for UL's and the question before the Court was whether UL or Warren are reading UL 1995 correctly (and whether Tutco's products comply with the reading adopted by the Court), the Complaint should be dismissed based on a plain reading of UL 1995.

As the Complaint admits, UL 1995 contains exceptions to Clause 30.18. One such exception acknowledged by the Complaint allows a product to comply with UL 1995 by including an Automatic Reset Cutoff rather than a Manual Reset Cutoff so long as the Automatic Reset Cutoff does not cycle under "intended operating conditions." Doc. 1, ¶48. The Complaint further acknowledges that Tutco's Automatic Reset Cutoffs only cycle under "abnormal" operating conditions, such as when there is "reduced airflow due to an obstructed duct, filter, or vent." *Id.* at ¶¶26, 28. Warren is, thus, left to assert that the "intended operating conditions" under which these heaters are designed to operate should be deemed to include "abnormal" conditions that occur when the heaters are malfunctioning. *Id.* at ¶50. This nonsense does violence to plain English. The heaters are not intended to malfunction.

Plaintiff's interpretation is undermined by its own admission that its reading of Clause 30.18 would render the Clause without effect. *See* Doc. 1, ¶51 (stating that the exception of Clause 30.18 applies to "a practically non-existent subset of UE Heaters" under Plaintiff's interpretation of the clause). It is an elementary principle of construction that text must be construed, if at all possible, in a way that gives effect to every clause and word, rather than rendering some superfluous. *See*, *e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (applying canon of superfluity to statutory construction); *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1358 (S.D. Fla. 2007) (applying canon to contract construction), *aff'd*, 308 F. App'x 389 (11th Cir. 2009). Warren's interpretation violates this canon.

### B. Warren Has Not Stated a Claim for False Association Because It Has No Valid Commercial Interest In The Mark At Issue

What has been said so far applies with full force regarding lack of injury and lack of any misrepresentation to the false association claim (Count II). This claim also fails because Warren

11

has no valid interest in the trademark that it accuses Tutco of falsely using. A claim for false association is a trademark infringement claim. An element of such a claim is that the plaintiff bringing the claim is an owner of the mark that it seeks to protect, or that the plaintiff has a valid commercial interest in the mark that the defendant is attempting to pass of as its own. *See North Am. Med. Corp.*, 522 F.3d at 1218. Warren claims no such interest in the UL mark but instead asserts that it can bring a Lanham Act claim based on damages allegedly caused to it by Tutco's authorized use of a *third-party's* mark in which it has no authority or interest. This falls well outside the scope of a Lanham Act false association claim. *See*, *e.g.*, *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1252, 1265 (S.D. Fla. 2002) (Jordan, J.) ("The central inquiry in the claims under § 1125 is 'whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers.'"). Warren has simply selected the wrong tool for the job.

### C. The FDUTPA Claims Fail For Multiple Other Reasons

There are still more reasons to dismiss the FDUTPA claims (Counts VI through VIII). To the extent they seek damages from Tutco, they fail because Warren does not allege that it engaged in a consumer transaction with Tutco. Competitors whose claims are not based on a purchase from the defendant do not have standing to bring claims for damages under FDUTPA. *See*, *e.g.*, *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1296-97 (S.D. Fla. 2014); *Kertesz*, 635 F. Supp. 2d at 1349-50; *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013).[6]

---

[6] Tutco acknowledges that some courts have concluded that the 2001 amendments to FDUTPA expanded the scope of the statute to allow claims for damages by plaintiffs who made no purchases from the defendant. Neither the Florida Supreme Court nor the Eleventh Circuit have addressed this question but the decisions holding that FDUTPA damages claims apply only to consumer transactions and represent the weight of the authority and supply sound reasoning. *See Taft v. Dade Cty. Bar Ass'n, Inc.*, 2015 WL 5771811, at *3-4 (S.D. Fla. Oct. 2, 2015) (Moore, J.) (describing the split of authority and holding "[g]iven the overwhelming weight of authority in favor of a narrow reading, this Court holds that 'person' in section 501.211(2) means only 'consumers,' including businesses that are consumers, and that the FDUTPA applies only to a consumer injured by an unfair or deceptive act when buying or purchasing goods and services."). As Judge Marra of this District explained, the 2001 amendment merely removed the bar on businesses bringing FDUTPA claims based on their consumer transactions, rather than removing the requirement that claims be based on consumer transactions. *See Kertesz*, 635 F. Supp. 2d at 1349. In *Richard Boyd Enterprises, Inc. v. Aquarium Pharmaceuticals, Inc.*, 2010

12

Further, the only category of damages Warren appears to claim is lost profits, and lost profits are not recoverable under FDUTPA. *See Diversified Mgmt. Solutions v. Control Sys. Research, Inc.*, 2016 WL 4256916, at *4-6 (S.D. Fla. May 16, 2016) (dismissing FDUTPA claim pursuant to Rule 12(b)(6) where plaintiff sought damages in the form of lost profits). Accordingly, the claim seeking damages under FDUTPA (Count VI) should be dismissed on these grounds.

To the extent the FDUTPA claims are based on a theory of "unfair" (rather than deceptive) conduct, Warren has not described any conduct by Tutco that meets the definition of "unfair." An unfair practice under FDUTPA is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (citation omitted). Plaintiff has identified no established public policy that prevents Tutco from truthfully representing that its heaters are UL-certified, and there is no such policy. In fact, it is well recognized that there are established public policy reasons for the contrary rule – that UL should be the sole arbiter of whether products comply with Underwriters Laboratory standards and that consumers should be informed of UL's conclusions. Both Florida and federal law recognize UL and other NRTLs as well suited to set standards and certify products to the standards. *See* pages 9-11 and fn. 5 above. As the District Court in *Board-Tech Electronic Co.* explained in dismissing similar claims:

> A number of thorny issues would arise if this Court were to allow this action [seeking to ban sale of competitor's products as UL-certified based on allegation that the UL-certified products did not actually meet UL standards] to proceed. First, it would allow a competitor to police a certification mark. Private testing of a product against standards could be used to commence a lawsuit that could expose competitive design and information to precisely the entity that should not have it. While there are many cases in which competitors are proper plaintiffs—

---

WL 11448226 (S.D. Fla. Feb. 8, 2010), this Court denied a motion to dismiss on these grounds but stated that the Court would "give the issue further consideration" if the defendant raised the issue at a later stage (which stage was not reached in that case). *Id.* at *3. Subsequent case law has favored addressing the issue as a matter of law, and Tutco respectfully submits that the narrower interpretation of standing for damages claims under FDUTPA is the correct one.

13

and do obtain discovery—one should not open the floodgates to such litigation without careful consideration. Careful consideration here requires dismissal.

2017 WL 4990659, at *7.  Although the *Board-Tech* court was not evaluating Lanham Act claims, the public policy considerations remain the same.

## CONCLUSION

Plaintiff has failed to state a claim on which relief may be granted and has also failed to demonstrate the jurisdictional threshold requirement for standing.  The Court should dismiss these ill-conceived claims as a matter of law.


Dated:  April 17, 2018

By: /s/ *Jorge J. Perez*

Jorge J. Perez (Florida Bar No. 779334)
jorge.perez@bclplaw.com
David Axelman (Florida Bar No. 90872)
david.axelman@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
200 South Biscayne Boulevard, Ste. 400
Miami, FL 33131-5354
Telephone:  (786) 322-7500
Facsimile:  (786) 322-7501

Jeffrey S. Russell (*pro hac vice forthcoming*)
jsrussell@bclplaw.com
Darci F. Madden (*pro hac vice forthcoming*)
dfmadden@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
211 N. Broadway, Suite 3600
St. Louis, MO 63102
Telephone:  (314) 259-2000
Facsimile:  (314) 259-2020


*Attorneys for Tutco, LLC*

6967262.6

15

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing was served by operation of the Court's CM/ECF system on all counsel of record this 17th day of April, 2018.

                                        /s/ *David Axelman*

6967262.6