UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 1:18-cv-21019

WARREN TECHNOLOGY, INC.,

    Plaintiffs,

v.

UL LLC and TUTCO, LLC, formerly
known as TUTCO INC.,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT UL, LLC'S MOTION TO DISMISS COMPLAINT (DE 7)**

Plaintiff Warren Technology, Inc. ("WTI") responds in opposition to the Motion to Dismiss Complaint and Incorporated Memorandum of Law (the "Motion"; DE 7) filed by Defendant UL, LLC ("UL") and states:

**I.     INTRODUCTION**

UL's attempt to dismiss WTI's Complaint for Damages and for Injunctive and Declaratory Relief (the "Complaint"; DE 1) should be denied.  As explained below, other than Counts II and VI,[1] each of the remaining counts of the Complaint involving UL are well pled and state viable causes of action against UL.  UL's blatant tactic throughout the Motion is to ignore the pleadings in the Complaint, and to instead focus on straw man arguments posited by UL, and which were not even pled by WTI.  Indeed, UL plainly ignores crucial pleadings in the Complaint which establish that WTI has stated a claim, and instead attempts to distract the Court from WTI's

---

[1]     As set forth below, WTI agrees to the dismissal without prejudice of Counts II and VI.

allegations. Based upon what was pled by WTI within the four corners of the Complaint, the Motion should be denied as further set forth below.

## II.   LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is 'plausible on its face.'" *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, No. 13-21653-CIV-WILLIAMS, 2015 WL 7007983, at *4 (S.D. Fla. May 18, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "All factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor." *Goldberg*, 2015 WL 7007983, at *4 (citing *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)). Under Rule 12(b)(6), dismissal is only appropriate "when, in the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates 'actual proof of those facts is improbable,' but the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id*. (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007)). "This plausibility standard requires that the plaintiff plead enough facts to raise a reasonable expectation that discovery will reveal evidence of the defendant's liability." *Goldberg*, 2015 WL 7007983, at *4 (citing *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013)).

## III.   MEMORANDUM OF LAW IN OPPOSITION

### A. WTI's Claims Satisfy Rule 8's Pleading Requirement

Rule 8, and not the heightened pleading standards of Rule 9(b), governs WTI's claims. *See, e.g., USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, No. 15-CIV-80352-Bloom/Valle,

2016 WL 4254257, at *2-3 (S.D. Fla. Feb. 16, 2016) (providing that Rule 8 governs claims under the Lanham Act and FDUPTA when the FDUPTA claim does not involve fraud). "To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id*. at *1 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).

The Complaint amply satisfies Rule 8's pleading requirements, and UL is improperly attempting to assert a heightened pleading standard (at least as rigorous as Rule 9(b), which does not apply) to WTI's claims. UL asserts that WTI has not alleged "which Tutco heaters are at issue, when the heaters were sold or advertised, or any facts to suggest that the Tutco heaters that do not incorporate NSRTs are not compliant with UL 1995, in light of the express exemption found in Clause 30.18." Motion, at p. 6. These arguments are both wrong and unsupported by law. First, WTI succinctly described which of Defendant Tutco, Inc.'s ("Tutco") heaters are at issue; Paragraphs 52-54 identifies that Tutco Cycling UE Heaters that do not incorporate NSRT Cutoffs[2] are the products in dispute. *See, e.g.,* Compl., at ¶¶ 52-54, 69-70. Second, the Tutco Cycling UE Heaters at issue have been sold and advertised during the time period in which UL has certified the heaters as compliant with UL 1995, and Tutco is selling and advertising them presently. *See, e.g.,* Compl., at ¶¶ 3, 52-56, 70, 78. Moreover, under Rule 8, WTI is not required to plead exactly

---

[2] As pled in the Complaint, the product(s) at issue are unitary electric heaters produced by Tutco that have cycling ART's and that do not have NSRT Cutoffs, identified in the Complaint as Tutco Cycling UE Heaters. Compl., at ¶¶ 52-54. By definition in the context of this case, this product description cannot be overbroad and it specifically describes all of Tutco's products that are in dispute. *See id*. For example, if a Tutco unitary electric heater has a NSRT Cutoff, then it is not subject of this lawsuit. *See id.* If a Tutco unitary electric heater does not have a cycling ART, then it is not subject of this lawsuit. *See id.* If a Tutco product is not a unitary electric heater, then it is not subject of this lawsuit.

"when the heaters were sold or advertised." *See* Fed. R. Civ. P. 8.³ Third, WTI does indeed plead facts demonstrating that Tutco Cycling UE Heaters without NSRT Cutoffs are not compliant with UL 1995. *See, e.g.,* Compl., at ¶¶ 45-51. UL simply refuses to accept these pleadings as true, and instead attempts to supplement or ignore the pleadings in the context of its own interpretation of UL 1995. But the Court must accept WTI's pleadings as true, and should give no credence to UL's attempt to supplement the allegations in the Complaint. *See Goldberg*, 2015 WL 7007983, at *4 (providing that on a motion to dismiss, "[a]ll factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor."). Given the foregoing, the Court should reject UL's argument that WTI has not pled with specificity. WTI has plainly pled more than adequate allegations under Rule 8, and UL is improperly attempting to impose a heightened pleading standard on the Complaint.

### B. Count I for Declaratory Relief States a Valid Claim

UL argues that Count I for Declaratory Judgment under 28 U.S.C. § 2201 fails to state a claim because it apparently "does not seek adjudication of a right; it impermissibly seeks determination of a disputed fact central to the FDUPTA claims." Motion, at p. 7. To support this statement, UL relies on *Seigel v. Provident Life & Accident Ins. Co*. Motion, at p. 7. But on its face, the case does not support dismissal of Count I.

First, the *Seigel* court acknowledges that in "deciding whether to entertain a declaratory judgment action, district courts are provided significant discretion." *Seigel v. Provident Life & Accident Ins. Co*., No. 8:16-cv-00584-EAK-TGW, 2016 U.S. Dis. LEXIS 98330, at *6 (M.D. Fla.

---

³ These specific types of allegations are required under Fed. R. Civ. P. 9(b), which does not apply. *See, e.g., Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (requiring that under Fed. R. Civ. P. 9(b), a plaintiff must plead specifics such as the specific content of the wrongful statements, "time and place" of the wrongful statements, and how the wrongful statements were misleading).

July 27, 2016) (citing *Kerolest Mnfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)); *see also SE Distribs., Inc. v. Un. Specialty Ins. Co.*, No. 16-24549-CIV-GRAHAM/SIMONTON, 2017 WL 960300, at *5 (S.D. Fla. Mar. 13, 2017) ("The Declaratory Judgment Act 'confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'") (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995)).  Accordingly, the Court is well within its power to consider Count I for declaratory judgment.

Second, *Seigal* is factually inapposite because the *Seigal* plaintiff brought a duplicative anticipatory breach of contract claim.  *See Seigel*, 2016 U.S. Dis. LEXIS 98330, at *6; *see also SE Distribs., Inc.*, 2017 WL 960300, at *5 ("A court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim."); *see also Hackett and Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1310-11 (S.D. Fla. 2010) (discussing that when considering dismissing a declaratory relief claim pleaded with a breach of contract claim, the court should consider "the completeness of the relief afforded to a party when it prevails on its breach of contract claim and judicial economy").  WTI has not brought a breach of contract claim.  *See* Compl.  So the Court is not required to dismiss WTI's declaratory judgment claim.

Third, in *Seigal*, the plaintiff was asking the court, through his declaratory judgment action, to rule on the definition of two terms ("injury" and "sickness") that were already specifically defined in the insurance policies in dispute.  *See id.*  Given that the terms in dispute were specifically defined by the insurance policies, the *Seigal* court ruled that plaintiff's anticipatory breach of contract claim duplicated his declaratory judgment claim.  *See id.*  Here, WTI is asking the Court to apply UL 1995, which involves interpretation of an undefined term ("intended

operating conditions" in UL Clause 30.18) that will determine whether UL 1995 requires Tutco Cycling UE Heaters to have NSRT Cutoffs. *See* Compl., at ¶¶ 45-51, 74-80.

Fourth, as described below, WTI has agreed to dismiss its FDUPTA claim for damages (Count VI), and therefore, Count I for declaratory judgment is not "duplicative of or subsumed by the claims advanced in other counts of the complaint." *SE Distribs., Inc.*, 2017 WL 960300, at *5-6 (dismissing declaratory relief claim, similarly to *Seigal*, because it was "subsumed in the breach of contract claim and superfluous."). Moreover, WTI's declaratory judgment claim (Count I) is not "duplicative of or subsumed by" WTI's remaining FDUPTA claims for declaratory relief (Count VII) and injunctive relief (Count VIII). The FDUPTA counts relate to UL and Tutco's marketing of Tutco Cycling UE Heaters and concern, *inter alia*, "safety specifications relating to fire hazards in HVAC equipment, and . . . improper certifications of compliance with UL 1995 [which] may mislead the public about, and needlessly expose the public to, potential fire hazards posed by Tutco Cycling UE Heaters." *See* Compl., ¶¶ 100-111. Count I for declaratory judgment does not contain allegations relating to consumers or marketing, and instead focuses on the plain language of UL 1995. *See* Compl., ¶¶ 59-64. Moreover, the FDUPTA counts (Counts VII-VIII) do not involve WTI's lost sales, which is a basis for the dispute underlying Count I for declaratory judgment. *Compare* Compl., ¶¶ 59-64, *with* ¶¶ 100-111. As such, Count I is not "duplicative of or subsumed by" WTI's FDUPTA claims, and the Court should deny the Motion with respect to Count I for declaratory judgment.

Finally, in exercising its discretion, there are two central concerns the Court should consider in determining whether to dismiss a claim for declaratory relief: (i) whether a decision on the remaining causes of action would necessarily render the request for declaratory judgment moot; and (ii) judicial economy. *Kenneth F. Hackett & Assocs., Inc*, 744 F. Supp. 2d at 1310-1311.

When denying a motion to dismiss based on a similar argument raised by Plaintiff in this case, the *Hackett* court determined that the declaratory judgment claim was not subsumed by an accompanying breach of contract claim because the plaintiff could "lose its breach of contract claim and still be entitled to declaratory relief." *Id* at 1311.  Similarly, in this case, WTI could lose on its other claims, but could still prevail on its federal declaratory relief claim.  Moreover, from a judicial economy perspective, a preliminary resolution of the well-defined issue that is the basis of WTI's claim for declaratory relief will require very limited discovery and is likely to significantly advance or resolve the remaining claims.  Accordingly, the Court should not dismiss WTI's claim for declaratory relief.

### C.  **WTI Agrees to Dismissal Without Prejudice of Count II**

WTI agrees to the dismissal without prejudice of Count II for false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

### D.  **Counts III and VI for False Advertising and Injunctive Relief Under the Lanham Act State Valid Claims**

UL's argument for the dismissal of WTI's False Advertising claims under the Lanham Act is nonsensical, disingenuous, and unsupported by law.  Indeed, UL initially attempts to distract the Court from WTI's claims by baselessly arguing that WTI "does not have standing to enforce" under Section 1054 of the Trademark Act, 15 U.S.C. § 1054.[4]  *See* Motion, pp. 8-9.  But the Court should ignore this argument because WTI is not attempting to bring a claim under the Trademark Act.  *See* Compl.  And WTI provides absolutely no law supporting the (unsupportable) position that WTI does not have standing under the Lanham Act.  *See* Motion.  And while UL acknowledges

---

[4]    WTI suspects that UL does not even believe that this argument is applicable, and it is notable that UL did not even bother to make this argument in a subsection.  Instead, this argument is curiously inserted in the introduction of UL's section on the Lanham Act.  *See* Motion, pp. 8-9.

the existence of the U.S. Supreme Court's opinion in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, UL does not acknowledge that the U.S. Supreme Court simplified the Lanham Act pleading requirements in that case, and adopted a flexible, "reasonable-interest test" which allows WTI to sue a non-competitor such as UL. *See Lexmark Intern., Inc. v . Static Control Components, Inc*., 134 S. Ct. 1377, 1392 (2014). So UL's standing argument fails.

UL then makes two other unavailing arguments: that WTI fails to plead falsity and proximate causation. The Court should reject these arguments as set forth below.

### i. WTI Has Pled That UL Has Deceptively Certified Tutco Cycling UE Heaters

UL argues that WTI's claims under the Lanham Act fail because WTI has not pled "falsity." However, to make this argument, UL must (and does) ignore the allegations in the Complaint. Indeed, a review of the Complaint demonstrates that WTI alleged: (i) that UL has misrepresented Tutco Cycling UE Heaters as UL compliant when they are not UL 1995 compliant; (ii) that under the plain and unambiguous terms of UL 1995, UE Heaters are required to have NSRT Cutoffs; (iii) that most Tutco Cycling Heaters do not have NSRT Cutoffs, and; (iv) that UL continues to certify Tutco Cycling UE Heaters as compliant with UL 1995, even though they do not have NSRT Cutoffs and are not compliant. Compl., at ¶¶ 74-78. These allegations establish literal false statements by UL as a matter of law. Accordingly, the Motion should be denied with respect to Counts III and IV.[5]

---

[5]   Putting aside these more than adequate pleadings of falsity, a Lanham Act claim is also actionable where the statement in dispute is true, but is also misleading. *See Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1229-30 ("The Lanham Act applies to two types of advertisements: (1) a statement that is 'literally false as a factual matter' and (2) a 'misleading' statement that may be literally true or ambiguous, but that 'implicitly conveys a false impression, is misleading in context, or is likely to deceive consumers.'") (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004)). UL does not even address this possibility. Accordingly, "falsity" is not a requirement to state a claim under the Lanham Act in any event and UL's motion fails on that basis as well.

UL also absurdly asserts that in order for WTI to plead its case, "this Court must first conclude that the authorized use of UL's mark is capable of being a deceptive use in the first place, which it is not." Motion, at p. 11. UL claims that because Tutco's use of UL's certification mark is authorized by UL, "the use of the UL mark in association with Tutco's heaters cannot be false under the parameters of the Lanham Act." Of course, this argument is unsupported by any meaningful law, and UL only cites to an inapplicable section of the Trademark Act. Moreover, this argument is hubristic to the extreme; UL is essentially telling the Court (i) that UL is incapable of making a false statement, (ii) that UL is incapable of wrongly interpreting UL standards, and (iii) that the Court cannot scrutinize UL's interpretation of the applicable safety standards (UL 1995).[6] Of course, all three assertions are patently false and wrong. UL can certainly wrongly interpret the requirements of UL 1995 or misrepresent product compliance when there is none, as pled in the Complaint. And the Court can certainly scrutinize UL and its actions. Indeed, if the Court can scrutinize private contracts, and federal and state legislation and regulations, it certainly has the purview to review UL's interpretation of UL 1995 and corresponding use of UL's certification mark[7] in a false and misleading manner.

Next, UL places great weight in the recently decided *Board-Tech* case from the Southern District of New York. *See* Motion, at pp. 11-13. However, the allegations in *Board-Tech* were meaningfully different from the allegations asserted in this case. First, in *Board-Tech*, the

---

[6] As pled in the Complaint, UL did not draft UL 1995. *See* Compl., at ¶ 42. UL 1995 was "created by a consensus process that establishes the minimum product safety requirements. Non-party Underwriters Laboratories, Inc. is a corporation authorized to oversee the consensus process of establishing the safety standards in this industry. *See id*.

[7] As UL makes clear in the Motion, it has the right to use the UL certification mark as a result of federal legislation. And it makes perfect sense that a federal court should be able to review UL's use of that federally granted mark.

certifying organization (also UL) was not a party to the lawsuit. Instead, the case involved one competitor suing another competitor. *Board-Tech Elec. Co., Ltd. v. Eaton Elec. Holdings, Inc.*, No. 17-cv-5028 (KBF), 2017 WL 4990659 (S.D.N.Y. Oct. 31, 2017). Second, the underlying basis for the *Board-Tech* claims were different than those brought by WTI. In *Board-Tech*, the plaintiff did not allege a wrongful and erroneous certification by UL (as WTI has done here). Instead, the *Board-Tech* plaintiff alleged that UL properly certified the defendants' designs and initial products as compliant with the operative UL standards, but that the defendant changed the products during production, and those changes rendered the products non-compliant with the UL standards. *See id.*, at *1-3. This resulted in the defendant applying the UL certification to its products when they were not in fact compliant. *Id.* The allegations in the instant Complaint are much different. WTI plainly pleads (i) that Tutco Cycling UE Heaters <u>by design</u> do not comply with UL 1995, (ii) that when UL certified Tutco Cycling UE Heaters, such heaters did not comply with UL 1995, and (iii) that notwithstanding their non-compliance with the plain language of UL 1995, UL nevertheless certified the Tutco Cycling UE Heaters as compliant. Compl., at ¶¶ 74-80. Moreover, as explained above and below, WTI plainly asserts allegations that are actionable under the Lanham Act. Accordingly, the facts alleged and parties involved in *Board-Tech* and this case differ, and the *Board-Tech* ruling is inapposite.

Next, UL asserts that WTI's "entire Complaint rests on its assumption" that WTI's interpretation of UL 1995 would "render the exception set for[th] in Clause 30.18 moot." Motion, at pp. 12-13.[8] To purportedly support this assertion, UL presumably asserts that "intended" and

---

[8]  UL is actually mistaken here as well. WTI's correct interpretation of Clause 30.18 makes the exception a rare case (which is typical of exceptions of any kind) but not moot. Notably, however, UL's interpretation would actually render the critical requirement of Clause 30.16 of UL 1995 <u>completely moot</u>. Indeed, under UL's interpretation, no unitary heater would <u>ever</u> require a thermal (or NSRT) cutoff. This important consideration, however, will have to wait until later in

"abnormal" operating conditions are mutually exclusive terms. But the Court cannot at this stage stray from the allegations of the Complaint; importantly, WTI pled that "intended operating conditions"[9] includes "abnormal (*i.e.*, reduced or restricted airflow) operating conditions". *See* Compl., at ¶ 50. On this basis alone, UL's arguments should be rejected.

Additionally, common sense and established law demonstrate that intended operating conditions could include "abnormal operating conditions," and the two terms are not mutually exclusive as UL would have the Court believe. WTI submits that the Court should view the terms "intended" and "abnormal" in light of the law governing product liability, especially given that UE Heaters are consumer products. Manufacturers are required to "exercise reasonable care so that its products will be reasonably safe for use in a foreseeable manner . . . in a breach of implied warranty, the test is stated as a product is defective if it is not reasonably fit for the intended use or foreseeable use at the time it left the possession of the manufacturer." *Pulte Home Corp., Inc. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1486-87 (M.D. Fla. 1992); *see also In re Standard Jury Instr. In Civ. Cases—Report No. 13-01*, 160 So. 3d 869, 871 (Fla. 2015) (providing that a "product is defective if it is not reasonably fit for either the uses intended or the uses reasonably foreseeable by the (defendant)"). WTI submits that UE Heaters operating under "abnormal" conditions is both an intended use and a "reasonably foreseeable use." This is especially true given that UE Heaters are components in HVAC units that often operate under many environmental variables, and often for years without maintenance. In other words, HVAC units, and the UE Heaters therein, are designed to operate under a wide range of conditions for long periods of time. And it is certainly reasonably foreseeable that HVAC units, and UE Heaters therein, would operate

---

this litigation, and is simply not an appropriate determination to be made on a Motion to Dismiss.

[9]   UL 1995 does not define the term "intended operating conditions."

under "abnormal" conditions, *e.g.*, conditions of reduced airflow (i) due to dirty or otherwise restricted filters, vents, or ducts, or (ii) due to environmental or mechanical causes.[10] As such, the Court should reject UL's baseless pleading stage assertion that "intended operating conditions" cannot include "abnormal operating conditions."

### ii. WTI Has Sufficiently Pled Proximate Causation

Next, UL argues that WTI's false advertising claims fail because UL apparently has not pled proximate cause. This argument is completely unfounded, and ignores WTI's allegations in the Complaint. Moreover, UL relies on the defunct proximate cause discussion in an Eleventh Circuit case, *Phoenix of Broward, Inc. v. McDonald's Corp.*, that has been abrogated by a more recent U.S. Supreme Court case, *Lexmark Intern., Inc. v. Static Control Components, Inc*. Indeed, the U.S. Supreme Court has rejected the more stringent pleading requirements formerly imposed by the Eleventh Circuit, and instead adopted a more flexible "reasonable-interest test" which allows WTI to sue a non-competitor such as UL. *See Lexmark Intern., Inc.*, 134 S. Ct. at 1392 ("By the time the Lanham Act was adopted, the common-law tort of unfair competition was understood not to be limited to actions between competitors . . . It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors.") (emphasis in original).

As the U.S. Supreme Court has stated, the proximate cause analysis is simply "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark Intern., Inc.*, 134 S. Ct. at 1390. In other words, "the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct. That is

---

[10] Clause 47 of UL 1995 specifically considers and tests the UE Heaters' performance safety during intended operation under various "abnormal" but foreseeable conditions of reduced airflow.

ordinarily the case if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Id.* (quoting *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268-69, 112 S. Ct. 1311, 1318 (1992)). The Supreme Court then held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Intern., Inc.*, 134 S. Ct. at 1391. Further, "lost sales . . . are injuries to precisely the sorts of commercial interests the [Lanham] Act protects." *Id.* at 1393. Indeed, the U.S. Supreme Court has stated that proximate cause allegations are sufficient even when "the causal chain linking . . . injuries to consumer confusion is not direct, but includes the intervening link of injury to" the plaintiff. *Id.* at 1394.

WTI has more than adequately pled facts which establish that UL has proximately caused WTI's damages. *See, e.g.,* Compl., at ¶ 80 ("As a result of the improper and misleading UL certification of Tutco Cycling UE Heaters by Defendant Tutco and Defendant UL, WTI has lost sales and will continue to lose future sales."). This allegation pleads direct causation between UL's improper certification of Tutco Cycling UE Heaters and WTI's lost sales. *See id.* Accordingly, UL's argument that WTI's damages are too "tenuous and far afield from any direct or indirect line of causation" is wrong. UL simply refuses to fairly acknowledge the allegations in the Complaint. As such, the Motion should be denied.

### E. WTI Agrees to Dismissal Without Prejudice of Count VI

WTI agrees to the dismissal without prejudice of Count VI for damages for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

### F. Counts VII and VIII for Declaratory Judgment and Injunctive Relief under FDUPTA State Valid Claims

Counts VII and VIII for declaratory judgment and injunctive relief under FDUPTA, § 501.211, Fla. Stat., state valid claims against UL. In the Motion, UL makes three arguments: (i) that WTI fails to plead damages; (ii) that WTI has not sufficiently alleged the existence of a deceptive act or unfair practice under FDUPTA, and; (iii) that WTI has failed to plead causation to support a FDUPTA claim. None of these arguments provides a legitimate basis for dismissal, and all three arguments should be rejected.

#### i. Damages Are Not an Element for Declaratory Judgment and Injunctive Relief Under FDUPTA

WTI has agreed to the dismissal without prejudice its FDUPTA claim for damages (Count VI). As such, damages is not an element of FDUPTA claims for declaratory judgment and injunctive relief, and this argument is now moot. *See XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1265 (S.D. Fla. 2016). "A plain reading of [FDUPTA] indicates actual loss is only a prerequisite for plaintiffs seeking monetary damages." *Id.* (citing § 501.211(2), Fla. Stat.) Indeed, FDUPTA broadly "allows 'anyone aggrieved by' a FDUPTA violation to seek injunctive relief, while only persons who have 'suffered a loss' may seek actual damages." *Id.* (quoting § 501.211(2), Fla. Stat.); *see also Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012); *Big Tomato v. Tasty Concepts, Inc.*, 972 F. Supp. 662, 664 (S.D. Fla. 1997). WTI has plainly pled facts demonstrating that it is "aggrieved" by the conduct of UL and Tutco. *See* Compl., at ¶¶ 14-56, 100-111. Indeed, WTI has pled that it has "lost sales and will continue to lose future sales because of this dispute, and this dispute has an impact on the Parties' commercial interests." Compl., ¶ 106. Accordingly, the Motion should be denied with respect to Counts VII and VIII.

### ii. *WTI Has Pled Deceptive Acts and Unfair Practices by UL*

WTI has unmistakably pled that UL has acted deceptively and has operated in an unfair fashion. Under FDUPTA, a "deceptive practice is one that is 'likely to mislead.'" *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009). Likewise, "an unfair practice is 'one that offends established public policy' and is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id*. (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

WTI has pled that UL has provided "improper certifications of compliance with UL 1995 [that] may mislead the public about, and needlessly expose the public to, potential fire hazards posed by Tutco Cycling UE Heaters." Compl., at ¶ 107.[11] These allegations are more than enough to establish that UL is acting deceptively and in an unfair fashion. Moreover, WTI has also pled that "in Florida all building codes and authorities having jurisdiction require HVAC equipment, and UE Heaters specifically, to be certified as complying with applicable safety standards by nationally recognized and accredited certification organizations, like [UL], before permitting installation in residential or commercial properties." *Id*., at ¶ 43. Then WTI pleads that "[p]urchasers, consumers and authorities having jurisdiction (including building code inspectors) specifically rely upon the certification label attached to the UE Heater to confirm compliance with UL 1995." *Id*., at ¶ 44. And WTI has pled that Tutco Cycling UE Heaters without NSRT Cutoffs pose "potential fire hazards" to the public. *See, e.g.*, Compl., at ¶ 107. These allegations sufficiently plead that UL has acted deceptively and has operated in an unfair fashion.

---

[11]   UL's assertion that WTI has "offered no case law, statute or other authority establishing that its interpretation of UL 1995 is correct. . ." is bizarre and uncompelling. WTI is not required to provide case law or "other authority" supporting its position in the Complaint. Federal Rule of Civil Procedure 8 does not support this additional fictitious pleading hurdle.

"The purpose of FDUPTA is '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Wyndham Vacation Resorts, Inc.*, 123 So. 3d at 1152 (quoting § 501.220(2), Fla. Stat. (2010)). Even based on UL's fictitious heightened pleading standard, WTI has unmistakably satisfied the pleading requirements to state claims for declaratory relief and injunction under FDUPTA. UL's argument requires the Court to completely ignore WTI's allegations in the Complaint (in violation of Rule 12(b)), and is predicated on UL's baseless, hubristic, and dangerous assertion that UL is the sole authority which can interpret UL 1995. There is no question that if WTI can prove its allegations pled in the Complaint, then UL has been deceptively certifying Tutco Cycling UE Heaters without NSRT Cutoffs in violation of UL 1995 standards, and that the public, including building code authorities in Florida, have been relying on those improper certifications when purchasing, installing and operating HVAC units that have Tutco Cycling UE Heaters. These allegations plainly meet any FDUPTA pleading requirement to state a claim under § 501.211, Fla. Stat. As such, the Motion should be denied with respect to Counts VII and VIII.

> iii. *Causation is Not a Necessary Element in a FDUPTA Claim for Declaratory Judgment and Injunctive Relief*

While UL is correct that a FDUPTA claim <u>for damages</u> requires a plaintiff to plead causation, that requirement does not apply to claims for declaratory judgment and injunctive relief under § 501.211(1), Fla. Stat. *See, e.g., Kertesz*, 635 F. Supp. 2d at 1348 ("To state a claim for <u>injunctive and declaratory relief</u> [under § 501.211, Fla. Stat.], Plaintiff must allege that Defendants engaged in a deceptive act or practice in trade and that Plaintiff is a person 'aggrieved' by the deceptive act or practice. A claim for <u>damages</u> under FDUPTA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.") (citing § 501.211, Fla. Stat.)

(emphasis added). WTI has plainly pled the elements required to state a claim for injunctive and declaratory relief under FDUPTA. *See Kertesz,* 635 F. Supp. 2d at 1348; *see also Klinger v. Weekly World News, Inc.*, 747 F. Supp. 1477, 1480 (S.D. Fla. 1990). Indeed, as described above, WTI has pled that UL engaged in a deceptive act or practice in trade and that WTI has been aggrieved by the deceptive act. Accordingly, WTI has pled valid causes of action under FDUPTA for declaratory judgment and injunctive relief, and the Motion should be denied with respect to Counts VII and VIII.

### G. WTI's Request to Replead if the Motion is Granted

WTI believes that it has more than sufficiently pled valid causes of action against UL. However, to the extent that the Court determines otherwise and dismisses any claims against UL, WTI requests the opportunity to replead.

## VI. CONCLUSION

For the reasons explained above, the Motion should be denied in all respects, except for the agreed dismissal without prejudice of Counts II and VI as explained above, and UL should be required to answer the Complaint.

Date:   April 25, 2018

Respectfully submitted:

Herron Ortiz
Attorneys for Warren Technology, Inc.
255 Alhambra Cir., Suite 1060
Coral Gables, Florida 33134
Tel: (305) 779-8100
Fax: (305) 779-8104

By:   /s/Andrew R. Herron
     Andrew R. Herron, Esq.
     Florida Bar No. 861560
     aherron@herronortiz.com
     Brian Lechich, Esq.
     Florida Bar No. 84419
     blechich@herronortiz.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/Brian Lechich
    Brian Lechich

## SERVICE LIST

**United States District Court, Southern District of Florida**
***Warren Technology, Inc. v. UL LLC, et al.*, Case No.: 1:18-cv-21019**

Francis A. Citera, Esq.
citeraf@gtlaw.com

Gretchen N. Miller, Esq.
millerg@gtlaw.com

Timothy Andrew Kolaya, Esq.
kolayat@gtlaw.com
belloy@gtlaw.com

David Axelman, Esq.
david.axelman@bclplaw.com
dionne.sakaike@bclplaw.com

Darci F. Madden, Esq.
dfmadden@bclplaw.com

Jeffrey S. Russell, Esq.
jrussell@bclplaw.com

Herron | Ortiz
255 Alhambra Cir., Suite 1060, Coral Gables, Florida  33134 (305) 779-8100