UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-21019-CV-UNGARO
MAGISTRATE JUDGE REID

WARREN TECHNOLOGY, INC.,

    Plaintiff,

v.

UL LLC, and TUTCO, LLC,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT TUTCO, LLC'S RENEWED VERIFIED MOTION FOR ATTORNEYS' FEES [ECF No. 75]**

### I. Introduction

This matter is before the Court on Defendant Tutco, LLC's ("Tutco") Renewed Verified Motion for Attorneys' Fees. [ECF No. 75]. This cause has been referred to the Undersigned to take all necessary and proper action as required by law with respect to the Motion. [ECF No. 76].

Having carefully considered the issues, the record, and the applicable law, the Undersigned respectfully **RECOMMENDS** Defendant's Renewed Motion for Attorneys' Fees [ECF No. 75] be **GRANTED in part and DENIED in part**, and Tutco should receive $152,062.50 in attorneys' fees, as further discussed below.

### II. Discussion

A.    <u>Factual and Procedural History</u>

Defendant Tutco is the prevailing party in this matter brought by Plaintiff Warren Technology, Inc. ("Warren") alleging violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), common law unfair competition, and violation of the Florida Deceptive and Unfair Trade Practices

Act ("FDUTPA"), Fla. Stat. § 501.211(1). In the instant Motion, Tutco seeks its attorneys' fees from Warren as the prevailing party under both the Lanham Act, 15 U.S.C. § 1117(a), and FDUTPA, Fla. Stat. § 501.2105. [ECF No. 75].

To briefly summarize, Warren brought this case against Tutco and UL LLC on March 16, 2018. [ECF No. 1]. Warren is a manufacturer of unitary electric (UE) heaters for HVAC systems and Tutco is its competitor. Both Warren and Tutco manufacture UE heaters, certified by UL, for installation in HVAC systems. [ECF No. 38]. After Tutco and UL filed Motions to Dismiss, Warren's original Complaint in this matter was dismissed in part with prejudice for lack of standing and dismissed in part without prejudice – with leave to amend – for failure to state a claim upon which relief can be granted. [ECF No. 38]. In the Order granting Tutco's Motion to Dismiss, the Court expressed "doubts" about whether "Warren can amend its complaint to adequately allege standing as to its claims against both UL and Tutco," although it allowed Warren the opportunity to amend because the Eleventh Circuit has held that leave to amend should generally be freely given. [*Id*. at 15-16] (citing *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008)).

One week later, Warren filed its Amended Complaint. [ECF No. 42]. Tutco filed a Joint Motion to Dismiss with UL, which argued that Warren again lacked standing and that Warren's Amended Complaint still failed to state a claim upon which relief can be granted. [ECF No. 44]. The Court again granted Tutco's Motion to Dismiss, saying that although Warren did have Article III standing, the Amended Complaint still failed to state a claim upon which relief can be granted, and dismissed the case with prejudice. [ECF No. 61].

Warren appealed, and the Eleventh Circuit affirmed this Court's dismissal in a published opinion. *See Warren Tech. v. UL LLC*, 962 F.3d 1324 (11th Cir. 2020). Warren also filed a petition

for rehearing, which the Eleventh Circuit also denied. *See* Order Denying Petition for Panel Rehearing, No. 18-14976-AA (11th Cir. Aug. 25, 2020).

The Eleventh Circuit referred this case back to this Court for consideration of attorneys' fees pursuant to 11th Cir. R. 39-2(d). Tutco now seeks its attorneys' fees as the prevailing party under the Lanham Act, 15 U.S.C. § 1117(a), and FDUTPA, Fla. Stat. § 501.2105. [ECF No. 75].

B.   Standard of Review

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Eleventh Circuit has recently clarified that "to be an 'exceptional case' under the Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018) (quoting *Octane Fitness, LLC v. ICON Health and Fitness*, 572 U.S. 545, 554 (2014))[1].

"The district court has the discretion to determine whether a case stands out from others based on the totality of the circumstances." *Domond v. PeopleNetwork APS*, 750 F. App'x 844, 847 (11th Cir. 2018) (citing *Tobinick*, 884 F.3d at 1117). "As in the comparable Copyright Act, there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified." *Octane Fitness*, 572 U.S. at 554 (cleaned up) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

FDUPTA also has an attorney's fees provision, Fla. Stat. § 501.2105. Under § 501.2105, the Court has discretion to award attorney's fees to the prevailing party after considering the following non-exhaustive list of factors:

---

[1] This standard is more liberal than the Eleventh Circuit's previous standard for attorney's fees, which required that a case be "malicious, fraudulent, deliberate, or willful" in order to warrant attorneys' fees. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994)), *abrogated by Tobinick*, 884 F.3d at 1118.

3

    (1) the scope and history of the litigation;

    (2) the ability of the opposing party to satisfy an award of fees;

    (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

    (4) the merits of the respective positions – including the opposing party's culpability or bad faith;

    (5) whether the claim brought was not in subjective bad faith but was frivolous, unreasonable, or groundless;

    (6) whether the defense raised a defense[2] mainly to frustrate or stall; and

    (7) whether the claim brought was to resolve a significant legal question under FDUPTA law.

*See Chow v. Chak Yam Chau*, 640 F. App'x 834, 838-39 (11th Cir. 2015) (*per curiam*) (citing *Humane Soc'y of Broward Cnty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971072 (Fla. 4th DCA 2007); *Rosen v. Rosen*, 696 So. 2d 697, 700-01 (Fla. 1997)).

Further, under FDUTPA "the fees recoverable are those devoted to the entire action, not merely the FDUTPA claim, 'unless the attorney's services clearly were not related in any way to establishing or defending an alleged violation of chapter 501.'" *Id*. at 838 (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013)) (internal citations omitted).

C.   <u>Analysis</u>

**Tutco's Entitlement to Attorneys' Fees Under the Lanham Act**

Under § 1117(a) of the Lanham Act, this case qualifies as an exceptional case both because of the relatively weak strength of Warren's litigating positions and because of the manner in which the case was litigated, each of which will be discussed in turn. *See Tobinick*, 884 F. 3d at 1118.

---

[2] The parties agree that this factor is not applicable, because Tutco prevailed as a Defendant.

4

Warren's case was relatively weak for several reasons. First, prior to the filing of this case, Warren, Tutco, and UL were all defendants in a related consumer class action lawsuit regarding similar alleged misrepresentations to the ones at issue in this case. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1195 (S.D. Fla. 2017). Without getting into too much detail, in that case, Judge Scola dismissed the case because the misrepresentation theory was not viable, since the disputed products were certified by UL, meaning that the sale of such products with UL certification labels was not a deceptive or unfair act under FDUTPA. *See id.* at 1192-95. Warren was obviously aware of the rulings in that case, because it was a defendant in that litigation along with Tutco and UL.

Second, when the Court granted Tutco's first Motion to Dismiss, finding that Warren's Complaint failed to state a claim, the Court included cautionary language to Warren that expressed doubt about whether Warren would be able to amend its pleadings to state a claim. [ECF No. 38 at 15-16]. Despite this, Warren proceeded to file an Amended Complaint, which was dismissed for essentially the same reasons as the original Complaint. [ECF No. 61].

Third, in looking to the rest of the record, Warren was unsuccessful on essentially every substantive motion that was filed in the case. Warren lost on the first Motion to Dismiss, though was given leave to amend some of its claims. [ECF No. 38]. Warren lost the second Motion to Dismiss too, this time having all its claims dismissed with prejudice. [ECF No. 61]. Warren's Motion for Partial Summary Judgment [ECF No. 27], Motion to Compel Expedited Mediation [ECF No. 34], and Motion for Reconsideration of the Court's first dismissal of the original Complaint [ECF No. 48], were all denied as moot when Warren's Amended Complaint was dismissed. [ECF No. 61]. After filing an appeal challenging the second dismissal of this case, Warren lost on appeal [ECF No. 74], then filed a Petition for Rehearing, which was also denied. *See* Order Denying Petition for Panel Rehearing, No. 18-14976-AA (11th Cir. Aug. 25, 2020).

While each of these three above reasons are separately sufficient to show the relatively weak litigation positions by Warren throughout the course of this case, considered together under the totality of the circumstances, *see Domond*, 750 F. App'x at 847, it is clear that this case qualifies as an exceptional case due to its overall weakness. While it is not necessary to determine whether this case also qualifies as an exceptional case due to the manner in which it was litigated, for purposes of addressing all of the parties' arguments, the Undersigned also concludes that this case qualifies under the "manner in which it was litigated" inquiry.

For this case to be deemed exceptional due to the manner in which it was litigated, there must be evidence that Warren acted in bad faith or with an improper purpose. *See Welding Servs., Inc. v. Forman*, 301 F. App'x 862, 862-63 (11th Cir. 2008); *see also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001). Here, there is evidence that this case was litigated in bad faith or with an improper anticompetitive purpose.

First, Tutco alleges that Warren's purposes for the lawsuit were "suspect" and brought for improper and anticompetitive purposes. [ECF No. 75 at 6-7]. Warren does not rebut Tutco's allegations that it used this case "as a strategic ploy to try to achieve a competitive advantage," and the Undersigned finds that Tutco has met its burden to show that this case qualifies as an exceptional case.

Here, Tutco first states that Warren employed what is calls "sharp litigation tactics," including certain settlement communications where representatives from Warren, instead of going through counsel, contacted Tutco directly and "threatened to 'publicly expose' and 'embarrass[]' Tutco unless Tutco entered into negotiations to be purchased by Warren or otherwise agreed to resolve the litigation."[3] While sharp litigation tactics on their own are not enough to meet the

---

[3] Tutco does not include the communications themselves in its Motion due to fear of potentially running afoul of Fed. R. Evid. 408, however, these communications are likely admissible for this fee dispute, since they do not involve the

6

exceptional case requirements, Tutco provides additional evidence of Warren's improper purposes and bad faith.

As additional evidence in support of its claim that Warren brought this case for anticompetitive purposes, Tutco provides a letter that Warren widely distributed to other members of their industry, including Tutco customers. [ECF No. 75-3]. The letter was sent after the Court granted the Motion to Dismiss, and it asserted to Tutco customers and the industry at-large that Tutco's products are not safe. Tutco also argues that Warren's letter mischaracterizes the Court's Order dismissing the case, omitted Judge Scola's prior order in the *Koski* case, and incorrectly advised Tutco clients that their customers would have a legal claim against them if they continued to purchase from Tutco and they were injured. Though this letter was sent after this case was filed, Warren does not dispute Tutco's characterization of its actions, and the letter is probative evidence of Warren's reasons for bringing this case, namely whether it was motivated by improper purposes or brought in bad faith.

Warren, rather than attacking Tutco's characterization of this case, responds that this case was not brought in bad faith because its litigation positions were not "disproven" since the Court "found that Warren was not entitled to challenge UL's interpretation of UL 1995 under these circumstances," potentially implying there could be some sort of circumstance where Warren would be entitled to challenge UL's interpretation of UL in the future. [ECF No. 78 at 7]. However construed, these arguments are not persuasive because they do not accurately reflect the Court's Order or the Eleventh Circuit's ruling on the appeal.

---

validity of Warren's underlying claims in this case. *See CNA Fin. Corp. v. Brown*, 162 F.3d 1334, 1338 (11th Cir. 1998) (citing Fed. R. Evid. 408). In any event Warren does not respond to Tutco's characterization of these communications and does not seem to dispute that this took place, so the Court need not examine the communications themselves.

7

In short, this case was dismissed with prejudice because Warren failed to plead a misrepresentation, which the Court determined was "fatal" to Warren's case and could not be cured. While Warren's original Complaint was dismissed without prejudice because, among other things, it failed to adequately allege standing (i.e., Warren's entitlement to bring the case), Warren's Amended Complaint was in fact determined to have met Article III standing requirements, and the case was instead dismissed because Warren's Amended Complaint failed to state a claim upon which relief can be granted pursuant to Fed. R .Civ. P. 12(b)(6). Thus, Warren's argument that it's claims were not "disproven" but that instead the Court innocuously determined that "Warren was not entitled to challenge UL's interpretation of UL 1995 under these circumstances" is not persuasive.

Accordingly, the Court should find that this case also qualifies as exceptional because Warren acted in bad faith or with an improper purpose, because the case was brought for anticompetitive purposes and was deployed "as a strategic ploy to try to achieve a competitive advantage."

**Tutco's Entitlement to Attorneys' Fees Under FDUTPA**

In addition to the above under the Lanham Act, this case also qualifies under FDUPTA. As previously mentioned, under Fla. Stat. § 501.2105, the Court has discretion to award attorney's fees to the prevailing party after considering the following non-exhaustive list of factors:

(1) the scope and history of the litigation;

(2) the ability of the opposing party to satisfy an award of fees;

(3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;

(4) the merits of the respective positions – including the opposing party's culpability or bad faith;

8

(5) whether the claim brought was not in subjective bad faith but was frivolous, unreasonable, or groundless;

(6) whether the defense raised a defense[4] mainly to frustrate or stall; and

(7) whether the claim brought was to resolve a significant legal question under FDUPTA law.

*See Chow*, 640 F. App'x at 838-39 (citations omitted).

Looking to the first factor, the scope and history of the litigation, the Undersigned finds that this factor weighs in favor of granting fees. This factor is in many ways similar to the Court's above determination that the case was relatively weak and that Warren was unsuccessful on nearly every substantive motion filed in this case and on appeal.

Next looking to the second factor, the ability of Warren to satisfy a fee award, Tutco asserts that because Warren is a substantial manufacturer of HVAC products, as opposed to an individual consumer bringing a claim under FDUTPA, it has adequate resources to pay the fees. Warren argues that Tutco fails to provide any meaningful evidence regarding Warren's current ability to satisfy a fee award. On Reply, Tutco argues that Warren argues for too high a bar, and that because Warren is not a publicly traded company with public financial records, it should not be required to prove its exact financial situation. The Undersigned agrees with Tutco, but only to the extent that this factor only slightly favors the grant of attorneys' fees without more detailed evidence regarding Warren's ability or inability to satisfy a fee award.

Third, considering whether an award of fees against the opposing party would deter others from acting in similar circumstances, the Undersigned finds that this factor is neutral. Tutco argues that a fee award would deter Warren from filing such a case in the future. Warren points out that

---

[4] The parties agree that this factor is not applicable, because Tutco prevailed as a Defendant.

this is not quite the correct legal analysis, but rather this factor looks at the general deterrent effect to anyone filing similar litigation in the future. Warren further argues that the dismissal with prejudice is enough of a deterrence because "[f]uture potential plaintiffs are unlikely to file a lawsuit that will be dismissed with prejudice," thus, "[n]o additional deterrence is necessary." Tutco correctly points out that this is a step too far, since a movant must always be a prevailing party under FDUTPA, meaning that it would be impossible for this factor to ever favor a movant under Warren's interpretation. Thus, while Warren correctly points out that Tutco used the incorrect legal standard, it does not do enough to sway this factor in its favor, and it should remain neutral.

Fourth, looking to the merits of the respective positions, including the opposing party's culpability or bad faith, the Undersigned finds that this factor weighs in favor of a fee award. As discussed above, Warren's positions at nearly every stage of these proceedings were unsuccessful, and there is evidence of bad faith as well. The record reveals not a single substantive motion or other aspect of this case where Warren prevailed. Warren lost two motions to dismiss, and its Motion for Partial Summary Judgment, Motion to Compel Expedited Mediation, and Motion for Reconsideration, were all denied as moot when its Amended Complaint was dismissed. After this, Warren lost on appeal, then filed a Petition for Rehearing, which was also denied. In terms of culpability or bad faith, as discussed above, the record shows that Warren brought this suit for anticompetitive purposes and in bad faith. Accordingly, this factor weighs in Tutco's favor as well. Similarly, in looking to the fifth factor, whether the claim brought was not in subjective bad faith but was nonetheless frivolous, unreasonable, or groundless, the Undersigned finds that it was groundless, and that fees should be awarded.

Finally, skipping the inapplicable sixth factor and looking to the seventh, whether the claim brought was to resolve a significant legal question under FDUPTA law, the Undersigned finds that this factor weighs in Tutco's favor. Despite the fact that this case resulted in a published opinion from the Eleventh Circuit, it did not resolve a significant legal question regarding FDUTPA law. In the Eleventh Circuit opinion, the FDUTPA claim was secondary to the Lanham Act claim in terms of analysis and importance. The Court analyzed the FDUTPA claim jointly with the Lanham Act and the Florida common law claims because they all relied upon the same theory of misrepresentation, which failed. The Court only briefly discussed Warren's FDUTPA claim for injunctive relief, which the Court denied for the same reasons.

The case did not advance FDUTPA law in any significant way. The Eleventh Circuit reiterated its longstanding acknowledgement that the Lanham Act "requires a plaintiff to establish that the defendant's ads were 'false or misleading.'" *Warren Tech.*, 962 F.3d at 1327-28 (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)). The Eleventh Circuit also noted that Florida common law and FDUTPA are similar and cited the applicable published Eleventh Circuit precedent setting out already established precedent. *See id.* at 1328.

None of the holdings from the Court or the Eleventh Circuit resolved a significant question regarding FDUTPA. Thus, although the appeal resulted in a published opinion, this factor weighs in favor of Tutco.

As a reminder, a fee award to the prevailing party under FDUTPA is discretionary upon consideration of the above list of non-exclusive equitable factors. *See Chow*, 640 F. App'x at 838-39 (citations omitted). Because essentially every factor favors a fee award to Tutco, or is neutral,

11

it would be equitable to the parties for the Court to exercise its discretion to award Tutco its attorneys' fees under FDUTPA.

### Calculation of Attorneys' Fees Using the Lodestar Method

Having determined that Tutco is entitled to attorneys' fees from Warren under both the Lanham Act and FDUTPA[5], the Court must next determine whether the fees sought by Tutco are "reasonable." Under the "lodestar" method, a reasonable attorney's fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1994)).

Tutco seeks reimbursement in the amount of $190,094.85, which is the sum of $120,773.25 in fees incurred by two partners, two associates, and one paralegal for 224.9 hours of work at the district court stage of these proceedings, plus $69,321.60 for 143.2 hours of work expended on the appeal. [ECF No. 75 at 8-12]. Tutco has chosen not to seek reimbursement for another $63,802 in fees actually paid to its attorneys in the course of this case. [*Id.*].

In support of the Motion, Tutco provides biographical information on its attorney and paralegal team along with invoices showing what Tutco actually paid its counsel during this case. [ECF Nos. 75-1, 75-2]. Warren opposes both the reasonableness of the above hourly rates as well as the reasonableness of the number of hours expended. [ECF No. 78].

---

[5] No allocation between efforts spent on the FDUTPA claims and the Lanham Act and common law claims is necessary because all of Warren's claims were based on the same core allegations. *See Chow*, 640 F. App'x at 838 (citing *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 271 (Fla 1st DCA 1985); *Mandel v. Decorator's Mart, Inc.*, 965 So. 2d 311 (Fla. 4th DCA 2007); *see also Warren Tech.*, 962 F.3d at 1329 ("all of Warren's claims against UL and Tutco are based upon the same allegation of falsity").

12

*Reasonable Hourly Rate*

The Court must first evaluate Tutco's requested fee in terms of the appropriate hourly rate. A reasonable hourly rate is to be measured by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. In determining this, the Court should consider the rate "for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895-96, n.11).

More specifically, "[i]n determining reasonable South Florida hourly rates, a court may consider certain factors, including 'the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases.'" *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ.*, No. 1:13-cv-21604-WILLIAMS/BECERRA, 2019 WL 3412159, 2019 U.S. Dist. LEXIS 101714, at *6-7 (S.D. Fla. June 17, 2019) (quoting *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (internal citations omitted)). "In the end, however, the Court remains an expert on the issue of attorneys' fees and "may consider its own knowledge and experience concerning reasonable and proper fees." *Id.* at *7, (quoting *Norman*, 836 F.2d at 1303) (internal citations and quotations omitted).

Here, Tutco seeks to recover a "discounted" rate of $675 per hour worked by St. Louis-based partner Jeffrey S. Russell, Esq., and $526.50 per hour worked by partner Darci F. Madden, Esq. For Miami-based associate David Axelman, Esq., Tutco seeks a "discounted" rate of $508.50 per hour. For St. Louis-based associate Steven J. Alagna, Esq., Tutco cites a "discounted" hourly rate of $297 and for St. Louis-based senior paralegal Terri A. DeGregorio, a "discounted" hourly rate of $243. Because these are the actual rates Tutco paid its attorneys, Tutco argues that this "is

powerful, and perhaps the best, evidence of [the] market rate" because it was "determined by supply and demand." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354–55 (11th Cir. 2000).

Warren objects to the rates charged by Tutco's attorneys, saying that they are excessive and should be "reduced to rates the Court deems reasonable." Warren argues that the St. Louis-based rates are not comparable to Miami rates for similar legal services, and that Tutco fails to meet its burden to demonstrate that the rates are reasonable, and that no local counsel was willing to do the work for a reasonable local rate. *See Barnes*, 168 F.3d at 437. The Undersigned does not find either argument particularly persuasive, though it agrees with Warren that Tutco's rates are not reasonable for this case.

While Mr. Russell, Ms. Madden, Mr. Axelman, Mr. Alagna, and Ms. DeGregorio all certainly have impressive resumes, those resumes alone do not justify the rates sought, and Tutco fails to provide additional "specific and detailed evidence" to meet their burden to demonstrate that the fees are reasonable for this case specifically. *See Barnes*, 168 F.3d at 427 (holding that the movant bears the burden to show that the rate is reasonable by "supplying the court with specific and detailed evidence.").

One glaring omission is that Tutco provides no affidavits or declarations from experts regarding the hourly rates of local trademark and unfair competition practitioners. Such are commonly used in this district to support a fee award. *See Fla Int'l Univ. Bd. of Trs.*, 2019 WL 3412159, 2019 U.S. Dist. LEXIS 101714, at *10-11, 18-19 (relying upon multiple expert declarations to provide testimony as to the prevailing market rate in a federal trademark case).

Instead, Tutco provides a national survey of class action defense rates, which shows that partners with greater than 20 years' experience average between $801 and $900 per hour, and another report which states that Miami is the fourth most expensive city for average hourly rates

in the country. [ECF No. 75 at 8]. On Reply, Tutco argues that these statistics show that Mr. Russell, Ms. Madden, and Mr. Alagna "– all attorneys who practice primarily in class and complex commercial litigation – were within the market norm." [ECF No. 79 at 6-7]. However, this is not persuasive because the average national hourly rate of a class action defense lawyer does not necessarily have any bearing on the prevailing market rate for a trademark and unfair competition lawyer in South Florida without more to provide some context for comparison.

Next, Tutco argues that because these are the actual rates Tutco paid its attorneys, this "is powerful, and perhaps the best, evidence of [the] market rate" because it was "determined by supply and demand." *See Dillard*, 213 F.3d at 1354–55. However, the Undersigned still finds that the rate is excessive because "[e]ven if a party chooses to employ counsel of unusual skill and experience, the court awards only the fee necessary to secure reasonably competent counsel." *Hermosilla v. Coca-Cola Co.*, No. 10-21419-CIV-MOORE/TORRES, 2011 WL 9364952, 2011 U.S. Dist. LEXIS 156499, at *25 (S.D. Fla. July 15, 2011) (quoting *Orenshtyn v. Citrix Systems, Inc.*, 558 F. Supp. 2d 1251, 1257 (S.D. Fla. 2007)) (internal citations omitted).

Just as it would be improper to award the extraordinary rates for New York lawyers in this Southern District of Florida case without first showing a lack of local attorneys practicing here who are willing and able to handle the case, *see Barnes*, 168 F.3d at 437, it is improper to award hourly rates for class action defense and complex commercial litigation rates for this trademark and unfair competition case. The Eleventh Circuit has made clear that a reasonable fee is not designed to compensate for premium level billing and services, but rather to provide adequate compensation that is reasonable to bill one's adversary irrespective of the skill, reputation, or experience of the counsel. *See Hermosilla*, 2011 WL 9364952, 2011 U.S. Dist. LEXIS 156499, at

15

*27 (citing *Barnes*, 168 F.3d at 437; *Norman*, 836 F.2d at 1301). Magistrate Judge Torres in *Hermosilla* analogized it well, saying:

> In other words, one can drive from point A to point B in a Ferrari, a BMW, or a Ford Fusion. Which car one chooses is ordinarily a matter of personal style coupled with financial freedom. The successful personal injury or criminal defense lawyer may choose the Ferrari. The average corporate defense lawyer will wisely choose the BMW. But a successful attorney fee applicant can only choose the Ford Fusion. It is quite reliable, consistent, and effective for the task at hand, and will not break the bank. And because of that only the cost of a Ford Fusion is compensable under an attorneys' fee statute based on the American Rule that governs federal litigation.

*Id.* at 27.

The Undersigned has examined the evidence provided by the parties, as well as reviewed other similar cases in this district regarding the reasonable rate for trademark and unfair competition lawyers in the locality. In addition, the Undersigned has reviewed all the biographical information provided for Tutco's paralegal and attorneys and considered its own knowledge of the billing rates charged by other trademark and unfair competition lawyers in South Florida. Accordingly, the reasonable rate should be set at $500 per hour for Mr. Russell and Ms. Madden, $350 per hour for Mr. Axelman, $250 per hour for Mr. Alagna, and $175 per hour for Ms. DeGregorio. This is not to say that Tutco's team was unsuccessful or unaccomplished. In fact, quite the opposite is true. Rather, the above rates are simply a reflection on the reasonable market rate for similar services from similarly skilled lawyers and paralegals in South Florida.

*Reasonable Number of Hours Expended*

The Court must next evaluate Tutco's requested fees for reasonableness in terms of the total hours expended by counsel. *See Norman*, 836 F.2d at 1303. After reductions, Tutco requests compensation for 109.4 hours expended by Mr. Russell, 151.3 hours by Ms. Madden, 19.1 hours by Mr. Axelman, 40.9 hours by Mr. Alagna, and 35.3 hours by Ms. DeGregorio. [ECF No. 75 at

16

9-12]. Warren argues that the requested fees should be reduced because the number of hours expended was unreasonable. In so arguing, Warren points to several specific examples, which the Undersigned will address in turn.

First, Warren argues that Ms. DeGregorio, a paralegal, "billed an excessive hourly rate for basic, low-skilled tasks," such as "checking case cites, drafting documents, and filing documents." Specifically, Warrant objects to 3.7 hours on 4/10/18, 4.9 hours on 4/11/18, 3.7 hours on 4/12/18, spent citation checking and creating a table of authorities in preparation of the Motion to Dismiss, and 3.8 hours on 4/17/18 preparing a corrected Motion to Dismiss, which corrected pagination errors previously made. The Undersigned finds that this time is excessive, namely the 4.9 hours on 4/11/18 spent checking citations and revising the Motion to Dismiss and the 3.8 hours on 4/17/18 correcting the Motion to Dismiss. Accordingly, the 4.9 hours spent on 4/11/18 should be reduced to 3.7 hours, more in line with other similar time entries, and Warren should not pay for the 3.8 hours spent on 4/17/18, because that time was spent to correct counsel for Tutco's errors and was not caused by Warren.

Second, Warren objects to 9.3 hours spent by Mr. Russell analyzing Warren's Motion for Partial Summary Judgment [ECF No. 27], which Tutco did not file a response to. Tutco replied that the time was warranted because Warren's motion "has a clear collateral effect on Tutco," and "would impact claims against Tutco," necessitating careful analysis. The Undersigned agrees with Tutco, and Warren's objection should be overruled. The Motion for Partial Summary Judgment was 14 pages long, but Warren's Statement of Undisputed Facts filed pursuant to S.D. Fla. L.R. 56.1 contained 173 pages of declarations and attachments. [ECF No. 28] 9.3 total hours spread across three days to review and analyze this was not unreasonable given the impact it could have potentially had on Tutco's case.

Similarly, Warren objects to 4.8 hours spent on 6/18/18 by Mr. Russell and 1.0 by Ms. Madden drafting a response to the Motion for Partial Summary Judgment, which was never filed. However, a review of Tutco's invoices shows the billing entries were not for drafting a response, but rather for Mr. Russell to "[w]ork on summary of UL 1995 interpretation" and Ms. Madden to "[r]eview information REDACTED regarding technical arguments about the meaning of UL 1995 and work on draft of explanation of same for inclusion in briefing to court REDACTED." [ECF No. 75-2 at 18]. Thus, the 4.8 hours spent by Mr. Russell are reasonable, however due to the redactions provided on Ms. Madden's billing entry, and Tutco's failure to rebut Warren's allegations regarding this entry in its Reply, Warren should not have to compensate Tutco for this hour expended.

Fourth, Warren objects to 8 hours spent drafting and revising its Opposition to Motion for Reconsideration of the dismissal of the declaratory judgment claims. Warren argues that because this was a joint filing, this should be "greatly reduced," but provides no specific reason why this time entry was excessive. Tutco points out that even though it was a joint filing, the signature block indicates that both UL and Tutco's counsel prepared the filing, and that the joint filing "reduced the bulk of the filings to the benefit of the Court and Warren." The Undersigned agrees, and Warren's objection to these hours should be overruled.

Last, Warren objects to the number of hours spent preparing for oral argument in the appeal. Warren argues that 57.6 hours was spent to prepare for half of a 15-minute shared oral argument, which it argues is excessive. Warren asks the Court to reduce this "by at least 50%." While Tutco argues on Reply that the Court should not "become green-eyeshade accountants" and should instead seek to do "rough justice" "not auditing perfection," [ECF No. 79 at 6] (citations omitted), it does not rebut Warren's assertion that this time spent on the appeal was unreasonable.

18

The Undersigned disagrees. Despite only having half of the 15-minute oral argument, Tutco's counsel still had to prepare for any question the panel could reasonably ask. Just because Tutco has less time to answer the questions does not reduce the universe of potential questions it could expect to field, nor does it allow for Tutco to only prepare half as hard for oral argument. The appeal was an all-or-nothing endeavor, and Tutco should be compensated as such.

D.  Conclusion

Having determined that Tutco is entitled to fees, and that its rates and hours should be reduced accordingly, as discussed above, the final step is to calculate the lodestar amount. The Undersigned concludes that Tutco should be entitled to recover reasonable attorneys' fees in the amount of $152,062.50 from Warren. That results from the above reduced hourly rates that are recoverable in the case, times the hours included in the application after subtracting the excessive hours. A table specifying the Undersigned's calculations for each timekeeper is presented below:

| Name | Reasonable Rate | Hours Billed | Reasonable Hours | Total Fee |
|---|---|---|---|---|
| Jeffrey S. Russel, Esq. | $500 | 109.4 | 109.4 | $54,700 |
| Darci F. Madden, Esq. | $500 | 151.3 | 150.3 | $75,150 |
| David Axelman, Esq. | $350 | 19.1 | 19.1 | $6,685 |
| Steven J. Alagna, Esq. | $250 | 40.9 | 40.9 | $10,225 |
| Terri A. DeGregorio, paralegal | $175 | 35.3 | 30.3 | $5,302.50 |
|  |  |  |  | $152,062.50 |

III.  Recommendation

Accordingly, the Undersigned respectfully **RECOMMENDS** that Defendant's Renewed Motion for Attorneys' Fees [ECF No. 75] be **GRANTED in part and DENIED in part** as follows. The Motion should be granted to the extent that the Court should find that Tutco is entitled to reimbursement of its attorneys' fees under both the Lanham Act, 15 U.S.C. § 1117(a), and FDUTPA, Fla. Stat. § 501.2105. As for the amount of fees Tutco should receive, the Motion should be granted in part and denied in part to the extent that Tutco should receive a total of $152,062.50 in attorneys' fees, rather than the entire amount requested.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 17th day of December, 2020.

UNITED STATES MAGISTRATE JUDGE

cc:   **U.S. District Judge Ursula Ungaro**; and

**All Counsel of Record via CM/ECF**